IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN MARCHETTI and | ) | |
| JONATHON MARCHETTI | ) | |
| | ) | No. 12-cv-05985 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| CHICAGO TITLE INSURANCE COMPANY, | ) | |
| f/k/a Ticor Title Insurance Company | ) | |
| and FIDELITY NATIONAL TITLE INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The parties' cross-motions for summary judgment are before the Court. Plaintiffs Kathryn and Jonathon Marchetti (collectively the "Marchettis") filed a partial motion for summary judgment against defendants Chicago Title Insurance Company (f/k/a/ Ticor Title Insurance Company) and Fidelity National Title Insurance Company (collectively "Chicago Title") asserting that this Court should hold that the calculable loss they suffered under the relevant owner's title insurance policy is the fair-market value of the subject property as it was on or about October 24, 2008, the claim date. In its own motion for summary judgment, Chicago Title argues that it did not breach the contract of title insurance executed with the Marchettis when it denied their claims for losses because the Marchettis did not suffer an actual loss, as required by the insurance contract. Chicago Title further argues that there is no genuine issue of material fact to support any of the Marchettis' claims in their First Amended Complaint ("Complaint"). For the reasons that follow, the Court grants Chicago Title's motion for summary judgment on all counts and denies as moot the Marchettis' motion for partial summary judgment.

## BACKGROUND

The following facts are undisputed, unless otherwise stated. On May 15, 2008, Chicago Title, through its predecessor Ticor Title Insurance Company, issued a standard 2006 American Land Title Association Owner's Policy of title insurance (No. 2000000605071OC) ("the Policy")

1

to the Marchettis for a house that the Marchettis purchased. Chicago Title also issued a loan title insurance policy to the Marchettis' lender, Peotone Bank & Trust Company (the "Loan Policy"). The Marchettis gave a mortgage to Peotone for $330,000, covering the $180,000 purchase price and a construction loan for the renovation of the Property. Mr. Marchetti was the general contractor and it was his company that performed the construction work on the house.

On October 24, 2008, a quiet title action was filed in state court against the Marchettis (Dkt 85-1, Exh. 4), and pursuant to the Policy, Chicago Title defended them in that action. Through discovery, the parties learned that the Marchettis acquired defective title to the Property through fraud perpetrated by a third-party. The state court ultimately found that the Marchettis had no right, title, or interest in the property. Dkt 84, ¶ 17.

Chicago Title also handled the settlement between the Marchettis and their lenders, and in March 2012, it paid $110,000 on the Marchettis' behalf in exchange for a complete discharge of the Marchettis' construction loan and mortgage. The $110,000 amount was based on an appraisal valuing the property at $110,000, as of October 15, 2010. Dkt 85-1, Exh. 2.

Seeking to hold third parties liable for the fraud that resulted in defective title to the house, Chicago Title also instituted counter- and cross-claims on the Marchettis' behalf. However, on May 14, 2012, Chicago Title notified the Marchettis that it would no longer pursue the Marchettis' cross- and third-party claims. Dkt 85-1, Exh. 13. Subsequently, a criminal action based on the fraud was filed in state court and resulted in an order of restitution made payable to Chicago Title for $75,000. Chicago Title has collected $37,500 of that judgment. Dkt 88, Exh. Q, Jean McGuire Quinn Deposition at 35:19-24 and 36:1-22.

After they signed the settlement agreement, the Marchettis demanded an additional $73,460.05 from Chicago Title, claiming that the amount represented reimbursement for two years of rent, special-ordered windows and doors, a security system, storage cots, framing, and overhead. In a letter dated March 27, 2012, Chicago Title asserted that the claimed expenses were not reimbursable under the Policy and instead offered to pay the Marchettis $3,000 for the earnest money deposit that they made. Dkt 85-1, Exh. 12.

 While Chicago Title has paid the Marchettis $110,000 for claimed losses under the policy, the Marchettis claim that Chicago Title still owes them at least an additional $88,000 because they have suffered damages exceeding $198,000, the undisputed policy limit. They filed a nine-count First Amended Complaint to recover those losses. Before the Court is the

Marchettis' motion for partial summary judgment and Chicago Title's motion for summary judgment as to all nine counts of the First Amended Complaint.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex,* 477 U.S. at 324.

**DISCUSSION**

I.      Chicago Title's Motion for Summary Judgment

Chicago Title seeks summary judgment on all counts of the Marchettis' First Amended Complaint. The Court will consider each claim in turn.

*Breach of insurance contract claims*

The Marchettis allege in Count I that because Chicago Title paid $110,000 and the covered loss of the Property under the Policy exceeds $198,000, Chicago Title owes them an additional $88,000, thereby breaching the contract by failing to pay for covered losses. Chicago Title contends, however, that the Marchettis have not and cannot show actual loss, particularly in light of the fact that Chicago Title paid to settle the Marchettis' mortgage and construction loan debt. An initial review of the Policy indicates that Illinois law controls. *See* Dkt 1-1, Section 17(a) of the Policy.

The Policy is a "contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant." Dkt 1-1, Policy, at Condition 8. The Marchettis have no lost equity in the property. They owed $330,000 on their mortgage loan. In 2010, when the property was appraised for settlement purposes, the property was worth $110,000. Even if the Court were to find that the property appraised for $202,000 on October 24, 2008, as the Marchettis insist, the Marchettis still would hold no equity in the property. In either event, the property would have been "underwater" because the house was worth much less than the amount the Marchettis owed their lender.

Even if this Court were to find that the date of loss is October 24, 2008, to succeed in a breach of contract claim, the Marchettis must show that they have suffered an actual loss due to the title failure. *Allison v. Ticor Title Ins. Co.*, 907 F.2d 645, 652 (7th Cir. 1990). This, they have not done. The Marchettis' attorney admitted during the hearing on the instant cross-motions that consequential damages are not compensable. See also *Gomez v. Fidelity Nat'l Title Ins. Co. of N.Y.*, 2012 WL 671935, at *4 (Mar. 1, 2012). Therefore, the Marchettis agree that the initial claim for damages based on rent paid and various construction items were not compensable under the policy. Additionally, the Marchettis do not allege that they owe any additional monies due to the title failure.

The Marchettis have not shown that a genuine issue of material fact exists to show that they have suffered an actual loss above and beyond the failure of title, which Chicago Title has completely remedied by settling the quiet title action and paying their mortgage lender to forgive the $330,000 debt the Marchettis owed on the property. For these reasons, the Court grants Chicago Title's motion for summary judgment as to Count I, breach of contract for failure to pay for covered losses.

The Marchettis allege in Count II that because Chicago Title abandoned the prosecution of the third-party claims, it breached the insurance contract by failing to diligently prosecute. Chicago Title contends it is entitled to summary judgment on this count because it diligently fulfilled its duty to defend and resolved the claim to quiet title. It had no duty to prosecute third-party claims once it settled the quiet title action and paid the Marchettis' lender $110,000 in exchange for complete release of the $330,000 mortgage note.

Chicago Title is not required to institute and prosecute claims, but if it does, it must do so diligently. *See* Dkt 1-1, Policy, at Condition 5. Further, Condition 7 provides that when Chicago Title pays, or otherwise settles, a claim under the Policy, Chicago Title's obligations to the Marchettis for the claimed loss or damage terminates, "including any liability or obligation to defend, prosecute, or continue any litigation." Here, Chicago Title defended the Marchettis for over three years in the quiet title action. Although title completely failed, Chicago Title resolved the claims such that the Marchettis suffered no actual monetary loss. Once the settlement was completed, resulting in the Marchettis disclaiming any rights to title of the property and the lender reducing the Marchettis mortgage liability to zero, there was nothing more that Chicago Title had to do on the Marchettis' behalf. The Marchettis have presented no case law that would

require the Court to conclude otherwise. Based on the foregoing, the Court grants of summary judgment in Chicago Title's favor as to Count II.

*Subrogation*

Chicago Title seeks summary judgment on Counts III, IV, and V. In Count III, the Marchettis seek a declaratory judgment that Chicago Title is not subrogated to any of the Marchettis' rights in the criminal or third-party actions. In Count IV, the Marchettis allege Chicago Title breached the title insurance contract when it sought and obtained restitution without deferring its subrogation rights until after the Marchettis recovered their full loss.  In Count V, the Marchettis allege that Chicago Title was unjustly enriched when it sought and obtained the restitution that the Marchettis allege they should have received.

The Marchettis' arguments fail because they recovered their full loss when Chicago Title settled the claim. Chicago Title did not receive a restitution payment until after it settled the claim and paid the settlement amount on the Marchettis' behalf. Moreover, there is no genuine issue of material fact that the Office of the Cook County State's Attorney ("State's Attorney") was responsible for the decision to have the criminal defendant pay $75,000 in restitution to Chicago Title. Although the Marchettis contend that there is no dispute that Chicago Title never notified them of the restitution award and payment and never provided payment to the Marchettis, they also cite no authority to support the proposition that it was Chicago Title's duty to inform them of the restitution award after Chicago Title resolved the quiet title action and successfully eliminated their mortgage debt. Finally, pursuant to Section 13, Chicago Title's subrogation rights ripened when it paid the settlement amount.  For these reasons, the Court grants summary judgment on Counts III, IV, and V.

*Fraud*

The Marchettis allege in Count VI that Chicago Title materially misrepresented to the Assistant State's Attorney ("ASA") and the court in the criminal case that it had ripe subrogation rights, in violation of the Illinois Title Insurance Act ("ITIA") (215 ILCS 155/25(b)). They further contend in Count VII that Chicago Title violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), by knowingly (a) misrepresenting its subrogation rights, or lack thereof, in communications with the ASA and the court in the criminal case and by (b) concealing from the Marchettis its procurement of restitution in the criminal case.

Chicago Title made the Marchettis whole when it settled the quiet title claim and paid the $110,000 settlement amount in full satisfaction of the Marchettis' $330,000 mortgage and construction loan. Once it settled and paid the settlement amount, Chicago Title became properly subrogated to any restitution the Marchettis may have been entitled to, pursuant to Condition 13 of the Policy. Further, Assistant State's Attorney ("ASA") Jean McGuire Quinn testified during her deposition that Chicago Title was not at all involved in the decision-making regarding restitution. See Dkt 88-5, Exh. Q, Jean McGuire Quinn deposition, 35: 19-24, 36: 1-22; 37: 16-24. Quinn's undisputed deposition testimony shows that Chicago Title made no representations about its subrogation or restitution rights. Chicago Title merely provided its mailing address to the ASA after she informed the company that the State's Attorney's office decided to recommend that the criminal court award restitution to the title company. Chicago Title's failure to notify the Marchettis of the ASA's intent to provide Chicago Title with the restitution payment or its failure to inform the ASA of the Marchettis' claim that Chicago Title owes them additional amounts are immaterial to this claim because Chicago Title was properly subrogated to the Marchettis and properly received restitution. Accordingly, the Court grants Chicago Title's motion for summary judgment on the fraud claims, Counts VI and VII.

*Unfair practices*

Chicago Title also seeks summary judgment on Count VIII, in which the Marchettis allege Chicago Title violated the ICFA by engaging in a number of unfair practices concerning the resolution of the quiet title and criminal actions, most of which the Court has resolved above. Courts consider three factors in determining whether conduct is unfair under the Act: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002); *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008).

The Act does not to apply to simple breach of contract claims, which, the Court finds at the outset, is the basis of the Marchettis' breach of contract claims against Chicago Title. *Bankier v. First Fed. Sav. & Loan Ass'n*, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992). Further, as explained above, the Marchettis have shown no genuine issue of material fact that Chicago Title deceived them, nor that Chicago Title intended to deceive them, or that any act or omission by Chicago Title proximately caused the Marchettis to incur damages. *Siegel v. Shell Oil Co.*, 656 F.Supp.2d

825, 832 (N.D. Ill. Sept. 4, 2009); see also *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 862 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the Act."). Again, the Marchettis have not and cannot show they have suffered an actual loss. They also have not shown that a genuine issue of material fact exists to dispute that the basis of their claims against Chicago Title is nothing more than a disagreement on the interpretation of "actual loss" under the Policy. See e.g., *Bankier*, 588 N.E.2d at 398 (finding the case involved a breach of contract between a borrower and a lender and that plaintiffs presented no evidence that the defendant made an affirmative misrepresentation to the plaintiff; rather, the parties merely disagreed on the interpretation of the contract). There are no facts to support the Marchettis' claim that Chicago Title committed an unfair act which caused the Marchettis to suffer actual damages that exceeded the $330,000 mortgage loan liability. Therefore summary judgment is granted as to Count VIII.

*Breach of fiduciary duty and duty of good faith*

Finally, Chicago Title moves for summary judgment on Count IX. In that Count, the Marchettis allege that a fiduciary duty arose when Chicago Title endeavored to defend them in the quiet title action. They further contend that Chicago Title breached its fiduciary duty and duty of good faith by taking restitution without regard to their interests, failing to inform the Marchettis that it had received funds in restitution, demanding the Marchettis submit to legal representation that presented a potential conflict of interest, and abandoning the criminal prosecution of the alleged fraudsters.

It is longstanding Illinois law that "the relation of an insurance company to its policy-holders is purely contractual" and therefore no fiduciary relationship exists between insurer and insured. *Coons v. Home Life Ins. Co.*, 13 N.E.2d 482, 485 (Ill. 1938). However, "[a]n insurance company has a fiduciary duty to defend its insured and to consider the insured's interests." *Douglas v. Allied Am. Ins.*, 727 N.E.2d 376, 382 (Ill. App. Ct. 2000).

Here, Condition 5(a) of the Policy provides that Chicago Title, at its own cost and without delay, must provide a defense of an insured in litigation. It is undisputed that Chicago Title fulfilled this contractual obligation. According to Section 5(b), Chicago Title may, but is not obligated to, institute an action to prevent or reduce loss or damage to its insured. Chicago Title's obligation to defend terminates when it settles and pays a claim covered under the Policy. Policy, § 7(b). That is precisely the situation here. The Marchettis were made whole when

Chicago Title defended, settled, and paid the settlement amount thereby eliminating the Marchettis' mortgage debt. Because this is a simple breach of contract claim and because there is no genuine issue of material fact that no fiduciary duty arose or was breached, the Court grants summary judgment on Count IX.

II.     Marchettis' Motion for Partial Summary Judgment

The Marchettis filed a motion for partial summary judgment contending only that no genuine issue of material fact exists precluding the Court from concluding that, under the Policy, the measurement of damages is the fair market value of the Property on the claim date, October 24, 2008. Because the Court has granted Chicago Title's motion for summary judgment as to all counts, the Marchettis' motion for partial summary judgment has been rendered moot. However, the Court notes that the Marchettis' motion raises an issue of first impression in Illinois – which date must be used to determine the date of loss. Although no Illinois court directly ruled on this issue, the Court notes the prevailing rule is that the insured's loss is to be measured from the date the insured discovers the title defect. See *Allison*, 907 F.2d at 652; *Gomez*, 2012 WL 671935. The Marchettis, however, acquiesced to Chicago Title's selection of the appraisal date when they agreed to settle the quiet title action.

**CONCLUSION**

The Marchettis' partial motion for summary judgment is denied as moot, and summary judgment is granted in Chicago Title's favor on all counts.


IT IS SO ORDERED.

_____

Date: January 14, 2015

_____
                                    Sharon Johnson Coleman
                                    United States District Judge